1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10             WESTERN DIVISION
11
12  SHANI MABIN,                    )   No. CV 03-8238-CW
                                    )
13                  Plaintiff,      )   DECISION AND ORDER
           v.                       )
14                                  )
    JO ANNE B. BARNHART,            )
15  Commissioner, Social Security   )
    Administration,                 )
16                                  )
                    Defendant.      )
17  _____ )

18
19       The parties have consented, under 28 U.S.C. § 636(c), to the
20  jurisdiction of the undersigned magistrate judge.  Plaintiff seeks
21  review of the denial of disability benefits.  As discussed below, the
22  court finds that the Commissioner's decision should be reversed and
23  this matter remanded for further proceedings.

24              I.  PROCEEDINGS IN THIS COURT
25       Plaintiff's complaint was lodged on November 12, 2003, and filed
26  on November 18, 2003.  On April 7, 2004, defendant filed plaintiff's
27  Administrative Record ("AR").  On August 6, 2004, the parties filed
28  their Joint Stipulation ("JS") identifying matters not in dispute,

                           1

1 | issues in dispute, the positions of the parties, and the relief sought
2 | by each party.  This matter has been taken under submission without
3 | oral argument.

## II.  PRIOR ADMINISTRATIVE PROCEEDINGS

5 |     Plaintiff applied for disability insurance benefits and
6 | supplemental security income on July 18, 2001 and July 19, 2001,
7 | respectively, alleging disability since June 9, 2001.  [JS at 2; AR at
8 | 58.]  An administrative hearing was held on January 8, 2003, before
9 | Administrative Law Judge ("ALJ") Robert Evans.  [Transcript, AR 69-
10 | 93.]  Plaintiff appeared without legal counsel or lay representation,
11 | and testimony was taken from plaintiff and a vocational expert.  [Id.]
12 | ALJ Evans denied benefits on June 23, 2003.  [Decision, AR 58-64.]
13 | When the Appeals Council denied review on September 5, 2003, the ALJ's
14 | decision became the Commissioner's final decision.  [AR at 5.]

## III.  STANDARD OF REVIEW

16 |     Under 42 U.S.C. § 405(g), a district court may review the
17 | Commissioner's decision to deny benefits.  The Commissioner's (or
18 | ALJ's) findings and decision should be upheld if they are free of
19 | legal error and supported by substantial evidence.  However, if the
20 | court determines that a finding is based on legal error or is not
21 | supported by substantial evidence in the record, the court may reject
22 | the finding and set aside the decision to deny benefits.  See Aukland
23 | v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v.
24 | Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240
25 | F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094,
26 | 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.
27 | 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada
28 | v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

1  "Substantial evidence is more than a scintilla, but less than a
2  preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence
3  which a reasonable person might accept as adequate to support a
4  conclusion." Id.  To determine whether substantial evidence supports
5  a finding, a court must review the administrative record as a whole,
6  "weighing both the evidence that supports and the evidence that
7  detracts from the Commissioner's conclusion." Id.  "If the evidence
8  can reasonably support either affirming or reversing," the reviewing
9  court "may not substitute its judgment" for that of the Commissioner.
10 Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

11                          **IV.   DISCUSSION**

12      To be eligible for disability benefits a claimant must
13 demonstrate a medically determinable impairment which prevents the
14 claimant from engaging in substantial gainful activity and which is
15 expected to result in death or to last for a continuous period of at
16 least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at
17 721; 42 U.S.C. § 423(d)(1)(A).

18 **A.   THE FIVE-STEP EVALUATION**

19      Disability claims are evaluated using a five-step test:

20          Step one: Is the claimant engaging in substantial
             gainful activity?  If so, the claimant is found not
21           disabled.  If not, proceed to step two.
             Step two: Does the claimant have a "severe" impairment?
22           If so, proceed to step three.  If not, then a finding of not
             disabled is appropriate.
23           Step three: Does the claimant's impairment or
             combination of impairments meet or equal an impairment
24           listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
             so, the claimant is automatically determined disabled.  If
25           not, proceed to step four.
             Step four: Is the claimant capable of performing his
26           past work? If so, the claimant is not disabled.  If not,
             proceed to step five.
27           Step five: Does the claimant have the residual
             functional capacity to perform any other work?  If so, the
28           claimant is not disabled.  If not, the claimant is disabled.

                                  3

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

"Severe" (at step two) means an impairment or combination of impairments that significantly limits physical or mental ability to perform basic work activities.  Step two is a de minimis inquiry to weed out nonmeritorious claims early on.  See Bowen v. Yuckert, 482 U.S. at 148, 153-154; 20 C.F.R. §§ 404.1520(c), 416.920(c)).  "Only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. Bowen v. Yuckert, 482 U.S. at 158; see also Smolen, 80 F.3d at 1290.

To "meet" a listing (at step three), a claimant must meet each characteristic of a listed impairment; to "equal" a listing a claimant must show symptoms, signs, and laboratory findings at least equal in severity and duration to characteristics of a relevant listing, i.e., of the listed impairment "most like" the claimant's impairment. Tackett, 180 F.3d at 1099; 20 C.F.R. § 404.1526.  If a claimant has multiple impairments, no one of which meets or equals a listing, the collective symptoms, signs, and laboratory findings of all impairments should be evaluated to determine whether, collectively, they meet or equal any listing.  Tackett, 180 F.3d at 1099; 20 C.F.R. § 404.1526.

Steps four and five involve assessing residual functional capacity ("RFC"), i.e., what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).

4

Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993); <u>Cooper</u>, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c)).  Pain may be either an exertional or a nonexertional limitation.  <u>Penny</u>, 2 F.3d at 959; <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c)).

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  <u>Tackett</u>, 180 F.3d at 1098 and n.3; <u>Smolen</u>, 80 F.3d at 1288.  If a claimant's burden is met, a <u>prima</u> <u>facie</u> case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering RFC, age, education, and work experience, a claimant can perform other work which is available in significant numbers.  <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

To meet the Commissioner's burden at step five, an ALJ may use the "Grids," <u>i.e.</u>, the Medical-Vocational Guidelines at 20 C.F.R., Part 404, Subpart P, Appendix 2.  <u>Osenbrock</u>, 240 F.3d at 1162; <u>Tackett</u>, 180 F.3d at 1100-1101.  An ALJ may rely on the Grids to find a claimant "disabled" based on strength limitations and vocational factors alone, even if the claimant has both exertional and nonexertional limitations.  <u>Cooper</u>, 880 F.2d at 1155-1156; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); "Grids" § 200.00(e)(2).  On the other hand, an ALJ may rely on the Grids alone to find a claimant "not disabled" only if the Grids completely and accurately represent the

5

claimant's limitations, and the claimant can perform the full range of jobs in a given category (e.g., sedentary, light, or medium work). Aukland, 257 F.3d at 1035; Tackett, 180 F.3d at 1101.  Because the Grids address only exertional limitations, significant nonexertional limitations may preclude relying on the Grids alone to deny benefits at step five.  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001); Tackett, 180 F.3d at 1103, Reddick, 157 F.3d at 729.

When the Grids alone do not suffice for reaching a step five decision, an ALJ may use the Grids as a "framework," but may also be required to consider evidence from a vocational expert ("VE").  Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Moore v. Apfel, 216 F.3d 846, 870 (9th Cir. 2000); see also 20 C.F.R. §§ 404.1569 and 416.969.  If an ALJ relies on VE testimony to deny benefits, "the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy."  Osenbrock, 240 F.3d at 1162-1163.

**B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

In plaintiff's case, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 9, 2001 (step one), that plaintiff had "severe" impairments, namely morbid obesity, lumbar spine sprain without radiculopathy, history of torn meniscus in the right knee, and status post gastric bypass surgery (step two), and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three).  [AR at 63, Findings Nos. 1-4.]  The ALJ determined that plaintiff retained the RFC to perform light work which does not involve working at heights, or around machinery, or around extreme cold, fumes or dust, but found

6

1  that plaintiff was not capable of performing her past relevant work as
2  a nurse's aid and dining room server (step four)[AR at 63-64, Findings
3  Nos. 7 & 8.]

4      Finally, relying on the VE's testimony, the ALJ found that,
5  despite her limitations, plaintiff was able to perform the light jobs
6  of office helper and small products assembler II, and that such jobs
7  existed in significant numbers in both the local and national
8  economies (step five).  [AR at 63, Finding No. 13.]  Accordingly, the
9  ALJ found that plaintiff was not disabled as defined in the Social
10 Security Act.  [AR at 63, Finding No. 14.]

11 **C.  POINTS AT ISSUE**

12      The parties, in their joint stipulation, state that the following
13 broad issues are disputed: (1) whether the ALJ properly analyzed
14 plaintiff's morbid obesity; and (2) whether the ALJ properly evaluated
15 plaintiff's subjective complaints.

16      **1.   Whether the ALJ Properly Analyzed Plaintiff's Morbid Obesity**

17      On the first issue, plaintiff contends that the ALJ did not
18 properly evaluate the effect of plaintiff's morbid obesity on her RFC.
19 Specifically, plaintiff argues that the ALJ failed to consider the
20 effect of plaintiff's obesity on her spine and knee impairments, and
21 failed to develop the record regarding the combined effect of these
22 impairments.  The court finds that the ALJ properly evaluated the
23 effect of plaintiff's morbid obesity on her RFC, and did not fail to
24 develop the record.

25      **a.   The Effect of Plaintiff's Morbid Obesity on Her RFC**

26      Plaintiff argues that the ALJ failed properly to consider the
27 effect of plaintiff's obesity on her RFC.  In particular, plaintiff
28 contends that the ALJ did not properly consider the effect of

7

1  plaintiff's obesity upon plaintiff's lumbar spine sprain and history
2  of torn meniscus in the right knee.

3      In 1999, obesity was deleted from the Listing of Impairments
4  because it by itself no longer "represent[ed] a degree of functional
5  limitation that would prevent an individual from engaging in any
6  gainful activity." Social Security Ruling 02-1p (2002). However,
7  "[i]n determining whether an individual's...impairments are of
8  sufficient medical severity that such...could be the basis of
9  eligibility under this section, the Secretary shall consider the
10 combined effect of all the individual's impairments without regard to
11 whether any such impairment, if considered separately, would be of
12 such severity." Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2002)
13 (quoting 42 U.S.C. § 423(d)(2)(B). "When there is evidence of
14 obesity, the ALJ must determine the effect of the claimant's obesity
15 upon [her] other impairments...and [her] general health." Stack v.
16 Barnhart, 327 F.Supp.2d 1175, 1178 (C.D. Cal. 2004) (citing Celaya,
17 332 F.3d at 1182).

18     The court finds that ALJ Evans properly considered the effect of
19 plaintiff's obesity upon her other impairments and her general health.
20 In particular, the court finds that the ALJ sufficiently considered
21 the effect of plaintiff's obesity upon plaintiff's lumbar spine sprain
22 and history of torn meniscus in the right knee. First, the ALJ's
23 decision specifically notes plaintiff's pain and limitation of motion
24 in her back and right knee.[1]  Moreover, the ALJ weighed these

25

26     [1]  Finding no. 3 states that plaintiff has medically determinable
   impairments of morbid obesity, lumbar spine sprain without
27 radiculopathy, and history of torn meniscus in the right knee (AR at
   63).  Additionally, the ALJ acknowledges plaintiff's history of "pain
28 in her neck, back shoulders, hips and knees" and finds that "[t]hese

                                    8

particular impairments in making his decision that plaintiff was not capable of performing her past relevant work as a nurse's aid and dining room server.  [AR at 63.]  These physical limitations were also the primary reason that the ALJ found that plaintiff was only capable of performing light work which does not involve working at heights, or around machinery, or around extreme cold, fumes or dust.  [AR at 62.] Furthermore, this downgrading of plaintiff's functional capacity from medium work to light work was based on medical evaluations by plaintiff's orthopedic surgeon and a State Agency physician, both of whom thoroughly considered the impact of plaintiff's obesity on her spine and knee impairments and nonetheless found that plaintiff was still capable of performing light work.  [AR at 62, 247, 273-279] These medical findings were clearly incorporated into the ALJ's determination that plaintiff was not precluded from performing all types of work.  [Id.]

In addition, the ALJ's questioning of the VE also adequately considered the effect of plaintiff's obesity upon plaintiff's spine and knee injuries.  When an ALJ poses questions to a VE, the ALJ's questions need not specifically mention a claimant's obesity, so long as "there is no evidence...of any functional limitations as a result of [claimant's] obesity that the ALJ failed to consider."  Burch v. Barhnart, 400 F.3d 676, 684 (9th Cir. 2005).  Here, although the ALJ's questions did not specifically mention plaintiff's obesity, the ALJ's questions set forth all of plaintiff's obesity-related "limitations and restrictions supported by the record."  Id. (citing Magallas v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  The ALJ's questions to the

impairments more than minimally affect her ability to perform basic work-related activities and are severe."  (AR at 60).

9

1  VE, for example, included plaintiff's limited ability to lift, climb,

2  crouch and kneel, all of which resulted from the combined effect of

3  plaintiff's obesity and plaintiff's knee and spine impairments.  [AR

4  at 88.]  These obesity-related limitations and restrictions were also

5  incorporated in the ALJ's conclusion that plaintiff, notwithstanding

6  her obesity-related limitations, was capable of working as an office

7  helper or assembler of small products.  [AR at 90.]

8       Since the ALJ specifically considered plaintiff's obesity-related

9  restrictions and limitations in analyzing plaintiff's functional

10 capacity, and based his evaluation of plaintiff's obesity-related

11 limitations on both medical records[2] and proper questioning of the VE,

12 the court holds that the ALJ properly considered the effect of

13 plaintiff's obesity on her RFC.

14                    **b.  ALJ's Duty To Develop the Record**

15      Plaintiff contends that the ALJ failed to fully and fairly

16 develop the record regarding the combined effects of plaintiff's

17 obesity and knee and spine impairments on her ability to perform work.

18 Specifically, plaintiff argues that the ALJ failed to elicit

19 sufficient testimony from plaintiff regarding the effects of these

20 obesity-related impairments on plaintiff's RFC.

21      When an administrative hearing is requested, although the

22 claimant retains the burden of proof, the ALJ has an independent duty

23 to fully and fairly develop the facts relative to the claim for

24

25       [2]  Dr. Boddie, the consulting orthopedic surgeon, concluded that
   plaintiff was capable of lifting 25 pounds occasionally and 10 pounds
   frequently.  He also determined that plaintiff could stand and walk 6
26 hours in an 8-hour day, and was able to bend and crouch occasionally
   (AR at 62, 247).  Dr Hartman, the State Agency physician, further
27 determined that plaintiff could occasionally climb ramps, stairs,
   ladders, ropes and scaffolds, as well as balance, kneel and crawl. (AR
28 at 62, 252)

                                    10

1  benefits and to assure that the claimant's interests are considered.

2  Armstrong v. Commissioner, 160 F.3d 587, 589 (9th Cir. 1998); DeLorme

3  v. Sullivan, 924 F.2d at 848; Brown v. Heckler, 713 F.2d 441, 443 (9th

4  Cir. 1983).

5       The ALJ's responsibility derives in part from the basic premise

6  that disability hearings are not adversarial in nature.  See Sims v.

7  Apfel, 120 S.Ct. at 2085. ("Social Security proceedings are

8  inquisitorial rather than adversarial. It is the ALJ's duty to

9  investigate the facts and develop the arguments both for and against

10  granting benefits"); Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir.

11  1992)(ALJ is not "a mere umpire" at the administrative hearing);

12  DeLorme, supra (noting that in nonadversarial disability proceeding

13  ALJ has basic duty to "inform himself about facts relevant to his

14  decision"). It is also based on the regulatory directive that, in an

15  administrative hearing, the ALJ "looks fully into the issues." 20

16  C.F.R. §§ 404.944, 416.1444. See Pearson v. Bowen, 866 F.2d 809, 812

17  (5th Cir. 1989)(recognizing ALJ's "duty of 'full inquiry' under §

18  416.1444").

19       As part of this duty, the ALJ has an obligation to take

20  reasonable steps to ensure that issues and questions raised by medical

21  evidence, particularly evidence from treating physicians, are

22  addressed so that the disability determination is fairly made on a

23  sufficient record of information, both favorable and unfavorable to

24  the claimant.  See Tidwell v. Apfel, 161 F.3d at 602; Smolen v.

25  Chater, 80 F.3d 1273 at 1279; Cox v. Califano, 587 F.2d 988, 990 (9th

26  Cir. 1978); see also 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3)

27  (providing steps to obtain additional evidence where medical evidence

28  is insufficient to determine whether claimant is disabled); 20 C.F.R.

11

1   §§ 404.1512(e), 416.912(e) (providing measures for obtaining

2   additional information from treating doctors).  Where it is necessary

3   to enable the ALJ to resolve an issue of disability, the duty to

4   develop the record may require consulting a medical expert or ordering

5   a consultative examination. See 20 C.F.R. §§ 404.1518a, 416.919a;

6   Armstrong v. Commissioner, 160 F.3d at 590; Pearson v. Bowen, 866 F.2d

7   at 812-813.

8        Additionally, "[a]s with other impairments, the ALJ should

9   explain how he determined whether obesity caused any physical or

10  mental impairments." Burch, 400 F.3d at 683 (citing SSR 02-01p).

11  Moreover, the obligation applies even when the claimant does not

12  specifically allege obesity as a disabling factor, because the ALJ

13  nonetheless has a duty to develop the record. Celaya, 332 F.3d at

14  1182-1183; Stack, 327 F.Supp.2d at 1178-1179.

15       On the other hand, the ALJ is not required to "exhaust every

16  possible line of inquiry in an attempt to pursue every potential line

17  of questioning." Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir.

18  1997).  Moreover, the ALJ's duty to seek additional evidence or order

19  further examinations is only triggered when the record is inadequate

20  to determine whether plaintiff is disabled.  See Breen v. Callahan, 56

21  Soc.Sec.Rep.Ser. 340, 1998 WL 272998 at *3 (N.D.Cal. 1998)(noting

22  that, in the Ninth Circuit, the ALJ's obligation to develop the record

23  is only triggered by "the presence of some objective evidence in the

24  record suggesting the existence of a condition which could have a

25  material impact on the disability decision").

26       In the present case, the ALJ found the record adequate to

27  determine the effects of plaintiff's obesity and spine and knee

28  impairments without seeking additional evidence or ordering further

12

examinations.  Specifically, the ALJ concluded that the record was sufficiently developed to find plaintiff severely impaired, to find plaintiff incapable of performing any of her past relevant work, and to find plaintiff capable of performing light work.  [AR at 63, 90.]

Since the ALJ's conclusions were based on medical records and VE testimony that sufficiently considered the effects of plaintiff's obesity and spine and knee impairments on her ability to perform work, plaintiff's contention that the ALJ did not fully develop the record fails to persuade.  Moreover, plaintiff's complaint is speculative, because plaintiff fails to specify what further analysis should have been pursued and what further limitations would have been revealed by such an analysis.

Plaintiff's only specific contention regarding the ALJ's failure to develop the record is plaintiff's claim that the ALJ did not elicit sufficient testimony from plaintiff regarding the impact of plaintiff's obesity and spine and knee impairments.  The court finds that plaintiff's lack of testimony on this matter does not constitute a failure to develop the record because the ALJ nonetheless squarely considered this matter in his decision.  The ALJ specifically mentioned the effects of plaintiff's obesity and spine and knee impairments in his decision,[3] and adequately weighed those factors in his determination to downgrade plaintiff's RFC from medium work to light work.  [AR at 63.]  Thus, although the effects of plaintiff's obesity and spine and knee impairments may not have been gleaned from

_____

[3]   The ALJ acknowledged that plaintiff has the medically-determinable impairments of morbid obesity, lumbar spine sprain without radiculopathy, history of torn meniscus in the right knee, and status post gastric bypass surgery. The ALJ further conceded that these impairments more than minimally affect her ability to perform basic work-related activities and are severe.

1   plaintiff's testimony, those effects were nonetheless sufficiently
2   considered and clearly incorporated into the ALJ's decision.

3       In addition, the ALJ's decision incorporated the testimony of the
4   VE, who testified that plaintiff's obesity and spine and knee
5   impairments prevented her from performing any of her past relevant
6   work, but did not preclude plaintiff from performing all types of
7   work.  Moreover, the ALJ further developed the VE's testimony by
8   posing hypothetical question to the VE concerning the effects of
9   plaintiff's obesity and spine and knee impairments on her ability to
10  perform work.[4]  Thus, although plaintiff may not have offered
11  testimony regarding the effects of these impairments, the ALJ
12  nonetheless sufficiently developed the matter via his questioning of
13  the VE.

14      Since the ALJ's decision sufficiently considered the effects of
15  plaintiff's obesity and knee and spine impairments on her RFC, the
16  court finds that the ALJ adequately developed the record,
17  notwithstanding plaintiff's lack of testimony regarding these
18  impairments.  The ALJ satisfied his duty to develop the record by
19  properly considering substantial medical evidence, and by sufficiently
20  developing the testimony of the VE, both of which adequately
21  considered the effects of these impairments.

22
23
24

25      [4]  The ALJ asked the VE whether plaintiff could perform various
    types of work, given plaintiff's ability to frequently lift 10 pounds,
26  occasionally lift 20 pounds, and occasionally but not frequently
    climb, balance, crouch, crawl, stoop and knee.  The ALJ also
27  instructed the VE to consider plaintiff's need to avoid concentrated
    exposure to extreme cold, wetness, humidity, fumes, gasses, and smoke
28  (AR at 88).

                                    14

**2.   Whether the ALJ Properly Evaluated Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ improperly evaluated plaintiff's subjective complaints by rejecting plaintiff's credibility without clear and convincing reasons.

Although an ALJ is responsible for determining a claimant's credibility, the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)(quoting Rollins v. Massanari, 261 F.3d 853, 8560857 (9th Cir. 2001)).

If a claimant produces "medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)(en banc)(adopting the rule of Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986), under which claimants are not required to produce objective medical evidence for severity of pain).

Additionally, the ALJ may consider the following factors when determining the claimant's credibility: "claimant's reputation for truthfulness, inconsistencies either in claimant's testimony, or between her testimony and her conduct, claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." Thomas v. Barnhart, 278 F.3d 947 at 958-959 (quoting Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir.

1  1997).

2       Here, plaintiff contends that the ALJ discredited plaintiff's

3  complaints of excessive pain and other subjective symptoms without

4  clear and convincing reasons.  [AR at 12.]  Specifically, plaintiff

5  argues that the ALJ improperly ignored plaintiff's subjective

6  complaints of pain and improperly rejected plaintiff's testimony

7  regarding other attendant functional limitations.

8              **a.   Plaintiff's Subjective Complaints of Pain**

9       The law is well-settled that once a disability claimant produces

10  objective medical evidence of an underlying impairment that could

11  reasonably be expected to cause some level of pain of the type which

12  the claimant alleges, the claimant's subjective complaints regarding

13  the severity of pain may not be discredited based solely on a lack of

14  objective medical evidence to corroborate the allegations.  Smolen, 80

15  F.3d at 1281-1282; Bunnell, 947 F.2d at 345; Fair v. Bowen, 885 F.2d

16  597, 601 (9th Cir. 1989).  This rule is based on the recognition that

17  pain is an inherently subjective phenomenon which cannot be

18  objectively verified or measured and which varies significantly among

19  individuals.  Bunnell, 947 F.2d at 347.

20       On the other hand, a claimant's assertions as to subjective

21  symptoms such as pain need not be accepted uncritically; the ALJ may

22  reject a claimant's subjective complaints of pain for lack of

23  credibility if specific, properly supported reasons and findings are

24  stated to justify that conclusion.  Orteza v. Shalala, 50 F.3d 748,

25  750 (9th Cir. 1995); Bunnell, 947 F.2d at 345-346.  The reasons for

26  rejecting complaints as to the severity of subjective symptoms "must

27  be clear and convincing if medical evidence establishes an objective

28  basis for some degree of the symptom and no evidence affirmatively

16

1    suggests that the claimant was malingering." <u>Swenson v. Sullivan</u>, 876

2    F.2d 683, 687-688 (9th Cir. 1989); accord, <u>Smolen</u>, 80 F.3d at 1281.

3    "The ALJ must state specifically which [complaint] is not credible and

4    what facts in the record lead to that conclusion." <u>Smolen</u>, 80 F.3d at

5    1284 (citing <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).

6         The court finds that the ALJ improperly ignored plaintiff's

7    subjective complaints of pain by failing to provide clear and

8    convincing reasons for discrediting the complaints.  Specifically,

9    since medical evidence established an objective basis for some degree

10   of plaintiff's symptoms and the ALJ found no affirmative evidence of

11   malingering, the ALJ's reasons for discrediting plaintiff's subjective

12   complaints of pain fail to satisfy the clear and convincing standard.

13        First and foremost, the ALJ erred by concluding that "[i]n regard

14   to [plaintiff's] other medical complaints, the positive objective

15   findings are sparse and do not support her alleged degree of

16   impairment." [AR at 61.]  Since the medical records are replete with

17   plaintiff's complaints of pain and subsequent treatment for pain, the

18   ALJ's conclusion is neither predicated on clear and convincing

19   reasons, nor based on substantial evidence.[5]  Likewise, the ALJ's

20   conclusion that "[t]here is no definite evidence of torn meniscus in

21

22        [5]  Plaintiff has complained of pain in her knee and back on
     multiple occasions (AR at 16, 110, 126, 133, 149-150, 152-154, 158-
     160, 165, 172, 208, 216, 237-243, 337, 339).  Moreover, Drs.
23   Dardashti, Mandelman, McCloy, Ukarapong, Venkataraman, and Yamaguchi
     treated plaintiff's symptoms of pain by prescribing pain medications
24   to plaintiff (AR at 180-191).  Acetaminophen with codeine elixir was
     prescribed by Dr. Yamaguchi on June 12, 2002, June 18, 2002, July 7,
25   2002, and July 23, 2002 (<u>Id</u>.).  Hydrocodone was prescribed by Dr.
     Dardashti on March 19, 2002, by Dr. Mandelman on October 16, 2002, and
26   by Dr. McCloy on December, 12, 2002 and January 3, 2003 (<u>Id</u>.).
     Celebrex was prescribed by Dr. Dardashti on April 9, 2002, by Dr.
27   Ukarapong on May 15, 2002, and by Dr. Venkataraman on August 7, 2002
     (<u>Id</u>.).  All of these medications are used to relieve moderate to
28   severe pain.

1  the right knee," is contradicted by substantial evidence and is not

2  supported by clear and convincing reasons.[6]

3      Additionally, the ALJ's primary reason for discrediting

4  plaintiff's complaints of pain was a doctor's "progress note" that

5  incidentally mentions that plaintiff is capable of performing some of

6  her regular daily activities.[7]  Given the extensive objective medical

7  evidence supporting plaintiff's complaints of pain and the absence of

8  any evidence of malingering, the court does not find this progress

9  report to be a clear and convincing reason for discrediting

10 plaintiff's subjective complaints.  Accordingly, the court finds that

11 the ALJ improperly rejected plaintiff's subjective complaints of pain.

12     The court also finds, however, that even if plaintiff's

13 complaints of pain were credited as true, the record is not

14 sufficiently developed to determine the effect of plaintiff's pain on

15 plaintiff's ability to work.  Specifically, since plaintiff's

16 complaints of pain were neither incorporated into the ALJ's

17 determination of plaintiff's RFC, nor included in the ALJ's

18 questioning of the VE, the court cannot determine the effect of

19

20
_____

21      [6]  The ALJ's conclusion is contradicted by medical evidence and
   by the ALJ's own findings:  A definite diagnosis of torn meniscus in
22 the right knee is stated in notes from Drs. McCloy and Noushkam (AR at
   10, 27-29), and in a report from Dr. Ravessoud (AR at 45).   In
23 addition, a probable diagnosis of torn meniscus in the right knee is
   stated in a report from Dr. McFarland (AR at 216).  Moreover, the
24 ALJ's own findings state that plaintiff has a history of torn meniscus
   in the right knee (Finding No. 3, AR at 63), and the ALJ's decision
25 states that the impairment was corroborated by Dr. Boddie (AR at 61).

26      [7]  The progress report merely states that plaintiff is able to
   take care of her children, cook, care for her house, do laundry, and
27 walk her children to and from school.  Moreover, the same progress
   report goes on to state that plaintiff has difficulty with physical
28 work due to joint pain (AR at 61, 335).

1   plaintiff's pain on plaintiff's capacity to work.[8]  For this reason, a

2   remand is necessary to further develop the record regarding

3   plaintiff's level of pain and to further consider the effect of such

4   pain on plaintiff's ability to work.

5               **b.   Plaintiff's Testimony Regarding Other Attendant**

6                      **Limitations**

7        An ALJ may not reject a claimant's testimony without providing

8   "clear and convincing reasons."  <u>Holohan v. Massanari</u>, 246 F.3d 1195

9   at 1208.  An ALJ must "specifically identify" the testimony found not

10  credible and "explain what evidence undermines the testimony," and the

11  evidence on which the ALJ relies must be "substantial."  <u>Id.</u>; <u>see</u> <u>also</u>

12  <u>Tonapetyan v. Halter</u>, 242 F.3d at 1148 ("The ALJ must give specific,

13  convincing reasons for rejecting the claimant's subjective

14  statements."); <u>Light v. Social Security Admin.</u>, 119 F.3d 789 at 792.

15       The court finds that the ALJ improperly discredited plaintiff's

16  testimony regarding other attendant limitations.  Specifically, the

17  court finds that the ALJ improperly rejected plaintiff's testimony

18  regarding continual menstrual bleeding. [AR at 61, 83-86.]  Although

19  the ALJ's decision states that plaintiff's medical records do not

20  contain "any mention of a perpetual menstrual cycle," a thorough

21  reading of the record reveals that plaintiff's excessive menstrual

22  bleeding is actually well documented.  [AR at 61]

23       Specifically, a December 7, 2001 report from Long Beach

24  Comprehensive Medical Center documents "Daily vaginal bleeding," and a

25

26       [8]  Although the ALJ incorporated plaintiff's physical limitations
     into his determination of plaintiff's RFC – namely plaintiff's limited
     ability to stand, sit, bend, crouch, and climb – plaintiff's pain was
27   never factored into the evaluation (AR at 62-64).  Likewise, the ALJ's
     questioning of the VE included plaintiff's physical limitations, but
28   also failed to mention plaintiff's level of pain (AR at 88-92).

1  February 12, 2002 report from King/Drew Medical Center documents
2  menstrual flow lasting "as long as 3 months." [AR 262, 327.]
3  Moreover, the record also indicates that this menstrual bleeding was
4  severe enough to warrant the performance of an endometrial biopsy on
5  February 14, 2002. [AR 267, 354] This documentation persuades the
6  court to find that the ALJ's rejection of plaintiff's testimony
7  regarding continual menstrual bleeding is not based on clear and
8  convincing reasons.

9       The court also finds, however, that the record is not
10 sufficiently developed to determine the effect of plaintiff's
11 excessive bleeding on plaintiff's ability to perform work, even if
12 plaintiff's testimony were credited as true. Specifically, the court
13 finds that neither the severity of plaintiff's menstrual bleeding, nor
14 the effect of plaintiff's menstrual bleeding on her RFC is
15 sufficiently developed to determine plaintiff's ability to perform
16 work. The ALJ failed to adequately develop the record regarding these
17 matters, despite the ALJ's partial incorporation of plaintiff's
18 menstrual bleeding in his questioning of the VE,[9] and despite the
19 ALJ's willingness to leave the record open for 60 days for the
20 submission of additional, relevant medical reports.[10] For this
21 reason, a remand is necessary to further consider the severity of

22

23

24  [9] The ALJ's questioning of the VE incorporated plaintiff's "need
to work near a restroom with access to that restroom on a as needed
basis," and also incorporated plaintiff's need to "add one or two
25  unscheduled bathroom breaks." (AR at 91-92)

26  [10] The ALJ left the record open for 60 days to allow plaintiff
to submit additional medical evidence of excessive menstrual bleeding,
27  but the ALJ did not procure those medical records himself, and did not
order any additional medical tests to verify or refute plaintiff's
28  testimony regarding menstrual bleeding.

1  plaintiff's excessive menstrual bleeding and to further consider the
2  effect of plaintiff's excessive bleeding on her ability to perform
3  work.

4  **D.    CONCLUSION**

5      For the foregoing reasons, the court finds that the ALJ properly
6  analyzed plaintiff's morbid obesity, but failed to properly evaluate
7  plaintiff's subjective complaints.

8  **E.    REMAND FOR FURTHER PROCEEDINGS**

9      The decision whether to remand for further proceedings is within
10 the discretion of the district court.  <u>Harman v. Apfel</u>, 211 F.3d 1172,
11 1175-1178 (9th Cir. 2000).  Where no useful purpose would be served by
12 further proceedings, or where the record has been fully developed, it
13 is appropriate to exercise this discretion to direct an immediate
14 award of benefits.  <u>Harman</u>, 211 F.3d at 1179 (decision whether to
15 remand for further proceedings turns upon their likely utility).
16 However, where there are outstanding issues that must be resolved
17 before a determination can be made, and it is not clear from the
18 record that the ALJ would be required to find the claimant disabled if
19 all the evidence were properly evaluated, remand is appropriate.  <u>Id</u>.
20 In this case, remand is appropriate for further consideration of
21 plaintiff's complaints of pain and for further consideration of
22 plaintiff's excessive menstrual bleeding.

21

**V.   ORDERS**

Accordingly, **IT IS ORDERED** that:

1.   The decision of the Commissioner is **REVERSED**.

2.   This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

3.   The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.


DATED: November 28, 2005


                                        /s/
                                        CARLA M. WOEHRLE
                                        United States Magistrate Judge

22